UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD R. FULLER,

                  Plaintiff,                    Civil Action No. 22-12531

v.                                      Matthew F. Leitman
                                      United States District Judge

VICKI ROUSH and the MICHIGAN        David R. Grand
DEPARTMENT OF CORRECTIONS,     United States Magistrate Judge

                  Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN
PART DEFENDANTS' MOTION TO DISMISS (ECF No. 24), AND TO DENY
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 27)**

On October 20, 2022, *pro se* plaintiff Gerald Fuller ("Fuller"), who at the time was incarcerated at the Central Michigan Correctional Facility ("STF") in St. Louis, Michigan,[1] filed this civil rights action pursuant to 42 U.S.C § 1983. (ECF No. 1). Named as defendants are the Michigan Department of Corrections ("MDOC") and Vicki Roush ("Roush"), a psychologist employed by the MDOC.[2] (*Id.*).

Broadly speaking, Fuller alleges that although he was convicted of non-sex-related crimes, he was improperly "classified as a sex offender" once in the custody of the MDOC and, as a result, was transferred to STF so that he could complete a sex offender treatment

---

[1] On September 21, 2023, Fuller was paroled. *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=202890 (last accessed June 11, 2024, 2024).

[2] The MDOC and Roush are referred to collectively as "Defendants."

program.  (*Id.*, PageID.2, 3).  There, he was housed with other inmates who had been classified as sex offenders.  Fuller alleges that he refused to admit to having committed a sex crime and refused to participate in the sex offender treatment program, and that those refusals negatively affected his parole eligibility.  (*Id.*, PageID.3, 5).  In his complaint, Fuller alleges ten separate constitutional claims against Defendants – including claims for violations of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights – and seeks injunctive relief, declaratory relief, and money damages.

Now pending before the Court are two motions.  First, Defendants filed a Motion to Dismiss.  (ECF No. 24).  Fuller filed a response and Defendants filed a reply (ECF Nos. 26, 31).  During the same timeframe, Fuller filed a Motion for Partial Summary Judgment. (ECF No. 27).  Defendants filed a response (ECF No. 29), and no reply was filed.

An Order of Reference was entered on May 22, 2023, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b).  (ECF No. 16).  Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss **(ECF No. 24)** be **GRANTED IN PART** and **DENIED IN PART**, and Fuller's Motion for Partial Summary Judgment **(ECF No. 27)** be **DENIED**.

## II.    REPORT

### A.    Factual Background

#### 1.    *Fuller's Jury Trial, Conviction, and Initial Sentencing*

Underlying Fuller's claims in the instant case is a jury trial that occurred on June 25, 2018, in the Wayne County Circuit Court. (ECF No. 1, PageID.2). In that case, Fuller was charged with one count of assault with intent to commit sexual penetration, one count of assault with intent to commit criminal sexual contact, felonious assault, and resisting and obstructing a police officer as a result of an incident that occurred on February 18, 2018, in Detroit, Michigan.[3] (*Id.*, PageID.38). Outside of these charges, Fuller has no known history of sexual assault. (*Id.*, PageID.30-39).

At Fuller's jury trial, the female victim testified that she was walking along Schoolcraft Road in Detroit when Fuller used his car to pin her against a fence. (*Id.*, PageID.20-21); *People v. Fuller*, No. 345500, 2020 WL 359646, at *1 (Mich. Ct. App. Jan. 20, 2020).[4] Allegedly, Fuller got out of the car, grabbed the collar of the victim's coat, and threw her to the ground. *Id.* Fuller and the victim began "tussling." *Id.* Fuller grabbed at the chest area of the victim's coat, which was zipped down to her knees, and tried to pull the coat apart to open it. *Id.* The victim thought that Fuller was trying to rape her, so she

---

[3] Fuller has an extensive assaultive criminal history, including thirteen felony convictions over the span of 29 years, many of which were committed while under community supervision. (ECF No. 1, PageID.30-39). Thus, as a result of the February 2018 incident, Fuller also received a habitual offender fourth offense notice. (*Id.*, PageID.25).

[4] As this information is in the public record, the Court may consider it without converting Defendants' motion to dismiss to one for summary judgment. *See Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005).

began yelling for help.  *Id.*  Two other vehicles pulled up, and an occupant of one of the vehicles got out of the car.  *Id.*  Fuller stood up, and the victim noticed that his pants were halfway down his thighs, and she could see his naked buttocks.  *Id.*  Fuller then got into his car and drove off.  *Id.*  While being taken into custody, Fuller resisted various instructions of the police officers.  *Id.*  An unused condom in its wrapper was found on the driver's seat of Fuller's vehicle.  *Id.*  At trial, Fuller was convicted of resisting and obstructing a police officer.  *Id.*  On the charges of assault with the intent to commit sexual penetration and assault with the intent to commit criminal sexual contact, Fuller was found guilty of the lesser included charge of assault and battery on each.  *Id.*

At sentencing, the trial court noted that it found, by a preponderance of the evidence, that Fuller had committed the charged sexual assault crimes, and it therefore considered the acquitted conduct at the time of sentencing.  *Id.*  As a result, the trial court sentenced Fuller to credit for time served on the assault and battery charges, and 58 months to 15 years in the MDOC for the resisting and obstructing charge under the habitual offender fourth offense notice.[5]  (ECF No. 1, PageID.2, 39).

### 2.    *Fuller's Arrival at the MDOC and His Classification*

Fuller alleges that upon his arrival at the MDOC in August 2018, he "was somehow classified as a sex offender" and, in approximately November 2018, transferred to the Macomb Correctional Facility ("MRF").  (*Id.*, PageID.2-3).  Fuller does not allege that

---

[5] Fuller was later sentenced in the Oakland County Circuit Court to 2 years 6 months to 30 years in the MDOC on an unrelated charge of fleeing a police officer - third degree, also under a habitual offender fourth offense notice.  (ECF No. 1, PageID.38).

Roush was responsible for classifying him as a sex offender in this manner. While at MRF, Fuller was told that, because of his classification, it had been recommended that he complete the Michigan Sexual Abuse Prevention Program ("MSAPP")[6], and he would be transferred to a prison where that program was available. (*Id.*).

As a result, in approximately May 2019, Fuller was transferred to STF, where he alleges that, on several occasions, he was placed in a "sex offender unit" with other prisoners who were also recommended to participate in MSAPP. (*Id.*, PageID.3). Although Fuller describes these unit assignments in his complaint as placements in a "Residential Treatment Unit for Criminally Sexually Deviant Mentally Ill Patients" (*id.*), he does not allege that he was actually forced to *participate* in any sex offender treatment. In fact, Fuller makes clear that he repeatedly refused to participate in MSAPP. (*Id.*, PageID.3, 4) ("I protested being there …" and "I turned down" MSAPP).

Fuller does allege that, while at STF, he protested his assignment to the sex offender unit, saying he had not been convicted of any sex crimes, at which point he was "told that a Jury Verdict doesn't make a difference" and he "would not go home without taking" MSAPP. (*Id.*, PageID.3). According to Fuller, when he was told that Roush was the "one in charge" of this program, he kited her "repeatedly" about his classification, but he received "no response at all." (*Id.*). In approximately April 2020, Fuller allegedly saw

---

[6] At the time of Fuller's initial sentence in 2018, the recommended sex offender treatment programming was known as the Michigan Sex Offender Program ("MSOP"). Sometime between 2018 and 2022, however, the name of the program was changed to MSAPP. Thus, for ease of reference and consistency, the Court will refer to this program by its current name – MSAPP – despite the fact that Fuller was initially recommended for MSOP.

Roush in person and asked her why he was in a sex offender unit; she allegedly "replied []

because [he] was a sex offender." (*Id.*).   When Fuller denied this, Roush allegedly

"promptly dismissed" him. (*Id.*).

### 3.    *Fuller's Appeal and Re-Sentencing*

On January 21, 2020, Fuller's initial sentence on the Wayne County charges was

reversed on appeal, and the case was remanded for resentencing. *Fuller*, 2020 WL 359646,

at *3.   In reaching its conclusion, the Michigan Court of Appeals stated that the trial court

should not have considered acquitted conduct in sentencing. *Id.*   On March 3, 2021, Fuller

was resentenced to 46 months to 10 years for the resisting and obstructing charge, making

his initial parole eligibility date December 16, 2021.   (ECF No. 1, PageID.3, 24).   The

resentencing court ordered that Fuller's updated presentence information report ("PSI") be

corrected to remove any reference to the underlying facts of the charges for which he was

acquitted. (*Id.*, PageID.3, 18-19).

In his complaint, Fuller alleges that, at a parole board interview in July 2021,

confusion was expressed about why he was recommended for MSAPP when he had "no

sex crime or sex history or sex description." (*Id.*, PageID.4).   Fuller alleges he was told

that this "error would be taken care of and [he] would be home by [C]hristmas …." (*Id.*).

He further alleges that, in August 2021, unbeknownst to him, Roush classified him as

"refuse/decline" status for MSAPP without notice or an interview or a hearing.   (*Id.*,

PageID.4, 44).   In October 2021, Fuller received a copy of a parole board deferral, notifying

him that the parole board had requested a current psychological evaluation before making

a final decision regarding parole. (*Id.*, PageID.4, 46).

6

4.    *Roush's Psychological Evaluation of Fuller*

As part of this psychological evaluation, Roush interviewed Fuller on October 10, 2021.  (*Id.*, PageID.47-49).  According to Roush's report, Fuller was informed of the nature of the evaluation, that the parole board would receive a copy of her report, and that participation was of his own free will.  (*Id.*, PageID.48).  Roush's report states that Fuller agreed to participate, although Fuller denies this.  (*Id.*, PageID.4, 48).

In addition to interviewing Fuller, Roush reviewed his revised PSI, his prior refusal to participate in MSAPP, his medical and institutional files, and a copy of the police report for the February 18, 2018 offense.  (*Id.*, PageID.48, 70-71).  During the interview, Fuller denied the allegations contained in the police report, stating that "the details of [the] offense are incorrect[,]" and Roush noted this denial in her report.  (*Id.*, PageID.48).  Roush's report also summarized the allegations contained in the police report as follows:

> According to the police report, the victim states that she left a church and was walking when Mr. Fuller pulled up on the grass toward her. He cornered her and came toward her, grabbing her chest area and threw her to the ground.  He pulled his pants down [and] attempted to pull her clothes off.  The report included witness statements who saw the offense as it was happening.

(*Id.*).

Additionally, in completing her psychological evaluation of Fuller, Roush scored him using two risk assessment tools – the Static-99R[7] and the STABLE-2007.  (*Id.*).  Both

---

[7] The scoring manual for the Static-99R states that use of this tool is appropriate where there is reason to believe an actual sex offense has occurred with an identifiable victim and the offender has been charged.  (ECF No. 1, PageID.63).  The manual further provides that the offender "need not have been convicted" of the sex offense in order to use the Static-99R tool.  (*Id.*).  Rather, it is to be used even if there is an acquittal, but only if, in the evaluator's opinion, a preponderance of

are tools that have been found to have scores that correlate with the risk of being charged or convicted of another sexual offense. (*Id.*). Roush scored Fuller's Static-99R based on demographic and criminal history information, which resulted in a score showing that he was at "above average risk" of being charged or convicted of a sexual offense. (*Id.*, PageID.48, 54-55). Roush also scored Fuller's STABLE-2007 by interviewing him and evaluating 13 different dynamic risk factors. (*Id.*, PageID.48, 50-53). The STABLE-2007 identified several areas of concern, including hostility toward women and a lack of concern for others. (*Id.*). Notably, however, Roush found no clinically significant concerns regarding sex drive preoccupation, sex as coping, or deviant sexual preference. (*Id.*). Fuller's STABLE-2007 score indicated that he had a moderate risk of stable dynamic needs. (*Id.*). When Roush completed her evaluation, she prepared a report and forwarded it, along with the assessments, to the parole board.

In his complaint, Fuller alleges that the tests administered by Roush were "totally inappropriate" and that Roush "misdiagnosed [him] intentionally with evil intent and deliberate indifference to the facts at her disposal." (*Id.*, PageID.4). More specifically, Fuller alleges that, during the evaluation, Roush "called [him] a rapist and asked [him] why [he] raped that woman." (*Id.*, PageID.7). When Fuller told her he had been acquitted of any alleged sexual conduct, Roush responded by saying that the police report said he "did

---

evidence suggests that a sexual offense occurred against an identifiable victim (the scoring manual actually uses the terms "Balance of Probabilities" and "Preponderance of Evidence" interchangeably and defines them both as "more likely than not," or "at least 51% certainty"). (*Id.*, PageID.63, 66-67, 69). Acquittals are scored because research has found "that men acquitted of rape were more likely to be convicted of sex offen[s]es in the follow-up period than men who had been found guilty[.]" (*Id.*, PageID.69).

it, and witnesses saw it." (*Id.*).  Fuller accuses Roush of fabricating and falsifying the psychological evaluation "with false information" in several additional ways.[8]  (*Id.*, PageID.4-5).

### 5.   *Fuller Alleges He is Denied Parole as a Result of Roush's Report*

Fuller alleges that Roush's report, which contained "false and fabricated evidence," affected his parole eligibility "in a negative way and contributed to the continuation of the forcefull [sic] commitment" to MSAPP.  (*Id.*, PageID.5).  Specifically, Fuller alleges that, on November 1, 2021, just weeks after Roush submitted her report, he received a "12-month continuance" with respect to consideration for parole.  (*Id.*).

Fuller further alleges that, in May 2022, he received his parole guideline score sheet

---

[8] For example, Fuller accuses Roush of fabricating "a 'history of prior sex offender treatment' that does not exist"; however, elsewhere, he admits that he refused to participate in the "T.R.Y." (Treatment Readiness for You) portion of MSAPP, the first step of that program.  (ECF No. 1, PageID.4, 15).   Additionally, Fuller alleges that Roush improperly referred readers of her evaluation to "his criminal record for detailed history of his [criminal sexual conduct ("CSC")]." (*Id.*, PageID.4).  However, the criminal history section of Fuller's amended PSI provides exactly such information, describing Fuller's acquittal of the CSC charges, his initial sentence, and the granting of a resentence by the Michigan Court of Appeals.  (*Id.*, PageID.38-39,48).  Fuller also alleges that Roush failed to make clear that he was acquitted of the CSC charges (*Id.*, PageID.4-5), but her report not only referenced the criminal history section of the amended PSI, which clearly mentions the acquittal, but also stated that Fuller "was charged with a CSC case and got convicted of Police offer-assault/resist/obstruct."  (*Id.*, PageID.48).   Roush also clearly stated that Fuller denied committing a sexual offense.  (*Id.*).  Fuller further claims that Roush fabricated the contents of the police report.  (*Id.*, PageID.4-5).  However, other than a passing reference in her report to the victim's statement that she "left a church," the police report directly matches the summary of the facts contained in Roush's evaluation.  (*Id.*, PageID.48, 70-71).  And, finally, Fuller claims that Roush lied when she stated that he had "one victim who was an adult under the Deviant Sexual Preference category of the [Stable 2007]."  (*Id.*, PageID.5).  But Roush noted "No Concern" in this category and what she wrote was: "Mr. Fuller denies any sexually deviant thoughts or behaviors. He identifies his preference as adult women.  He has one victim who was an adult."  (*Id.*, PageID.52).  Fuller does not deny that he was convicted of assault against an adult victim in the case for which he was then serving a prison sentence.

in preparation for his next parole board interview, which was scheduled to take place in July 2022.  (*Id.*, PageID.6).  He claims he "was scored a negative 1 point for refusing a psychological program" – a program that he alleges was only required because of Roush's "misdiagnosis" of him.  (*Id.*, PageID.6, 57).  According to Fuller, this "1 point subtraction equaled out to [him] being 1 point shy of being a high probability of parole instead of average probability which negatively effected [sic] [his] parole eligibility …."  (*Id.*, PageID.6).  In August 2022, Fuller was again denied parole for an additional 12 months, this time in part because he refused to participate in psychological programming that had been "recommended or required" and he "chose not to be involved" and was deemed "not amenable to treatment[.]"  (*Id.*, PageID.6, 60).  Fuller claims, then, that he was penalized for refusing "sex offender treatment" after being "misdiagnosed, mislabeled, and misclassified and stigmatized" by Roush.  (*Id.*, PageID.6).[9]

After the parole board's action in August 2022, Fuller alleges that he "decided to cooperate and participate unwillingly" in MSAPP because he "saw no other choice if [he] wanted to get a parole."  (*Id.*).  On September 13, 2022, however, Fuller was notified that it was no longer recommended that he participate in MSAPP.  (*Id.*, PageID.7).  He alleges, though, that he was "still [] labeled a sex offender, just a low level sex offender."  (*Id.*).  As a result, on October 20, 2022, he filed a complaint in the instant case, alleging various violations of his constitutional rights.  Defendants now move to dismiss Fuller's claims.

---

[9] Fuller also alleges that Roush "broke confidentiality" when she shared his "sensitive mental health information" with another inmate and that these actions put him at risk of "direct mortal danger of assaults" as a result of the false stigmatization that he was a sex offender.  (ECF No. 1, PageID.6).  These allegations are discussed in greater detail, *infra* at 34-36.

**B.      Defendants' Motion to Dismiss**

*1.      Standard of Review*

In their motion to dismiss, Defendants argue that all of Fuller's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[10]  (ECF No. 24, PageID.307-28).  Such a motion tests a complaint's legal sufficiency.  Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500

---

[10] Defendants raise several other arguments in their motion to dismiss.  For example, they argue that Fuller lacks standing to bring claims for injunctive and/or declaratory relief, or that claims for such relief are now moot, because at the time Fuller filed his complaint in this case, it was no longer recommended that he complete MSAPP.  (ECF No. 24, PageID.300-07).  Defendants also argue that Fuller's claims against the MDOC and Roush, in her official capacity, are barred by the Eleventh Amendment.  (*Id.*, PageID.307).  And, finally, Defendants argue that Roush is entitled to qualified immunity.  (*Id.*, PageID.328-32).  These arguments are also addressed herein.

F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless[,]" *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead facts sufficient to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

## 2. *Analysis*

As set forth above, primarily at issue in this case are a series of events that resulted in Fuller, who was not convicted of a sex crime, being recommended to participate in sex offender treatment in the form of MSAPP, and allegedly facing negative consequences based on his refusal to participate in that program. Essentially, Fuller alleges that Roush

violated his constitutional rights by wrongfully classifying him as a sex offender[11] (without providing him with a hearing or other method of challenging that classification) and recommending that he participate in MSAPP (which allegedly would require him to admit having committed sex offenses for which he was acquitted), resulting in two denials of parole based on his refusal to do so.  Defendants advance several arguments in support of their motion to dismiss, each of which will be addressed in turn.

a.  *Fuller's Requests for Declaratory and Injunctive Relief are Not Moot*

Before addressing the merits of Fuller's claims, Defendants first argue that his claims for injunctive and/or declaratory relief are moot and, thus, should be dismissed for lack of jurisdiction.[12]  (ECF No. 24, PageID.300-05).  Specifically, Defendants assert that

---

[11] Importantly, Fuller acknowledges that he was initially classified as a sex offender not by Roush, but upon his arrival at the MDOC.  (ECF No. 1, PageID.2).  However, he now alleges that the harm he suffered stems from Roush's October 2021 psychological evaluation.

[12] Defendants also argue that Fuller does not have standing to bring claims for declaratory and/or injunctive relief.  Article III of the Constitution limits federal courts to adjudicating actual cases or controversies.  U.S. Const. Art. III, § 2.  A plaintiff's personal interest in the litigation must exist at the beginning of the suit and continue throughout the course of the litigation.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 170 (2000).  The doctrine of standing generally assesses whether that interest exists *at the outset*, while the doctrine of mootness considers whether it exists throughout the proceedings.  *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021).

To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff must establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct, and (3) must seek a remedy that is likely to redress that injury.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Here, Defendants argue that because the recommendation that Fuller complete sex offender treatment had been removed at the time he filed his complaint, he was not suffering a current or ongoing injury in fact.  (ECF No. 24, PageID.301-04).  The Court disagrees.  Fuller alleges that at the time he filed his complaint he was still classified as a "low level sex offender" (ECF No. 1, PageID.7), which, at least arguably, constitutes an injury in fact, *see infra* at 17-26.  Moreover, Fuller seeks both a declaration that such classification violated his constitutional rights, and injunctive relief removing any such reference from his MDOC records.  (ECF No. 1,

13

at the time Fuller filed his complaint in the instant case, he admitted that it was no longer recommended that he complete MSAPP, and he has failed to allege any facts showing that the recommendation for MSAPP would reoccur. (*Id.*, PageID.300; ECF No. 1, PageID.7). Indeed, as set forth above, *supra* at footnote 1, Fuller was paroled following the filing of his complaint in this case. Thus, Defendants argue that Fuller's claims for declaratory or injunctive relief are moot and should be dismissed for lack of jurisdiction.

"The issue of mootness implicates the court's subject matter jurisdiction inasmuch as federal courts are limited by Art. III of the Constitution to deciding cases and controversies." *Mosley v. Hairston*, 920 F.2d 409, 414 (6th Cir. 1990). Only "live" controversies which persist in "definite and concrete" form even after intervening events have altered the parties' circumstances satisfy this requirement. *Id.* (citing *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974)). A defendant's "voluntary cessation of a challenged practice" does not automatically moot a case. *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008) (internal quotations omitted). Rather, a claim is only moot where "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (internal quotations omitted). The "heavy burden" of persuading the court that the challenged conduct cannot be reasonably

---

PageID.10). Given Fuller's allegations that he was recommended for sex offender treatment without notice or hearing, the Court is simply not persuaded by Defendants' argument that the fact that such recommendation was eventually removed – apparently without explanation – means that, at the time he filed his complaint, there was not a real and immediate threat that such a recommendation could have been reinstated after a removal. Thus, the Court is satisfied that, at the time Fuller filed his complaint, he had standing to bring claims for declaratory and/or injunctive relief.

expected to start up again lies with the party asserting mootness. *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003)

In his response brief, Fuller argues that his claims are not moot because he has "only been WAIVED for MSAPP as a low level sex offender, but still label[ed] [] as a sex offender for lower level treatment which [he was] still being force[d] to partake in by being a resident in the L-unit sex offender treatment program."  (ECF No. 26, PageID.341) (emphasis in original); (*see also* ECF No. 27, PageID.347) (has only been "WAIVED" for MSAPP; record has not been cleared, nor has the "sex offender" classification and label been removed entirely).  Fuller also makes clear, as part of his requests for declaratory and injunctive relief, that he seeks in part an order requiring Defendants to:

> … cease classifying, labeling and stigmatizing [him] as a sex offender in all files pertaining to [him] including electronic and paper, including all health files and diagnos[e]s.  **And all mandatory and involuntary sex offender treatment be null and void and removed from all [his] files and paperwork.  All false evidence be totally removed from all M.D.O.C. files, including electronic and paper and health**.

(ECF No. 1, PageID.10) (emphasis added).  Defendants, as the party asserting mootness, do not represent that they have expunged all relevant paperwork and files related to Fuller's classification and recommendation for MSAPP.

For all of these reasons, Defendants have failed to meet their heavy burden of showing that their September 2022 removal of a MSAPP recommendation renders Fuller's claims for injunctive and declaratory relief moot.  *See Toney v. Owens*, 779 F.3d 330, 334 n.8 (5th Cir. 2015) (holding that deletion of designation for pending sex therapy assignment after discovering inmate was misclassified did "not render [inmate's] claims for injunctive

and declaratory relief moot.").

> b.    The Viability of Fuller's Constitutional Claims

As set forth above, Fuller brings claims against Roush and the MDOC pursuant to 42 U.S.C. §1983.  To state a claim under § 1983, a plaintiff must allege the violation of a constitutional right by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Fuller alleges ten separate constitutional violations by Roush[13] – including violations of the Fifth, Sixth, Eighth, and Fourteenth Amendments.  Each is discussed below.

In his complaint, Fuller alleges that Roush violated his procedural due process rights by, without notice or a hearing, depriving him of a protected liberty interest by: (1) "labeling, classifying, and stigmatizing" him as a "Deviant Criminal Sex Offender," despite his acquittal on sexual assault charges; (2) forcibly committing him to a mental health residential treatment program/unit for sex offenders; and (3) recommending that he be required to complete sex offender treatment classes.  (ECF No. 1, PageID.8-9).

---

[13] Fuller sues Roush in both her individual and official capacities, and he also attributes many of the alleged constitutional violations to the MDOC.  (ECF No. 1, PageID.2, 7-9).  However, the Eleventh Amendment bars all civil rights actions brought in federal court – whether for injunctive, declaratory or monetary relief – against a state and its agencies, as well as against state employees who are sued in their official capacities.  *See Pettway v. Michigan Dep't of Corrs.*, No. 19-11201, 2019 WL 2369281, at *2 (E.D. Mich. June 5, 2019); *Merrill v. Whitmer*, No. 22-10541, 2022 WL 1004635, at *4 (E.D. Mich. Apr. 4, 2022).  Thus, where Defendants argue that Fuller's claims against the MDOC, as well as his official capacity claims against Roush, are barred by Eleventh Amendment immunity (ECF No. 27, PageID.307) – points Fuller does not contest – such claims should be dismissed.

16

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1.  This clause has both a procedural and substantive component.  *EJS Prop., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).  "Procedural due process is traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property; substantive due process 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'"  *Id.* (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)).

### (1)   Violation of Fuller's Procedural Due Process Rights

To prevail on a procedural due process claim,[14] a plaintiff must prove that: (1) he had a constitutionally protected interest; (2) the government deprived him of that interest; and (3) the government did not afford him constitutionally adequate process.  *See Golf Village N., LLC v. City of Powell, Ohio*, 42 F.4th 593, 598 (6th Cir. 2022).  As for procedural due process, a prisoner can be deprived of his liberty such that due process is required in two contexts: (1) when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court; or (2) when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

---

[14] Fuller's substantive due process claim is discussed *infra* at 24-26.

17

*Sandin v. Conner*, 515 U.S. 472, 484-87 (1995).  Applying these principles to Fuller's allegations that he was deprived of a liberty interest in three ways – by being classified a sex offender, despite his acquittal on such charges; by being forcibly committed to a mental health treatment unit for sex offenders; and by being recommended for MSAPP – his allegations survive Defendants' motion to dismiss.

Pointing to Fuller's allegation that Roush violated his procedural due process rights by, without notice or a hearing, "labeling, classifying, and stigmatizing" him as a "Deviant Criminal Sex Offender," despite his acquittal on sexual assault charges (ECF No. 1, PageID.8), Defendants argue, citing *Harper v. Arkesteyn*, No. 19-11106, 2022 WL 2338578 (E.D. Mich. June 28, 2022) ("*Harper II*"), that "it is only classification as a sex offender, *combined with* mandatory sex offender treatment, that has been found to create a protected liberty interest by some courts, not the classification alone."  (ECF No. 24, PageID.318) (emphasis in original).  Defendants' argument lacks merit, as *Harper II* does not stand for the broad proposition ascribed to it by Defendants.

In *Harper II*, this Court discussed the Sixth Circuit's prior decision in *Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518, at *3 (6th Cir. Apr. 28, 2020) ("*Harper I*"), where it considered the prisoner plaintiff's allegation that two mental health practitioners wrongfully classified him as a sex offender, despite the fact that he had neither been convicted of a sex crime nor accused of any sexual wrongdoing while incarcerated.  In evaluating Harper's claim that his procedural due process rights were violated when the defendants classified him as a sex offender without notice or a hearing, and required him to complete sex offender programming to be eligible for parole, the Sixth Circuit merely

noted Harper's *allegation* that it was "the stigmatizing consequences of being labeled a sex

offender, when coupled with mandated behavioral modification therapy, [that] constituted

the kind of deprivation of liberty that requires procedural protections." *Id.* The *Harper I*

court then explained:

> **This circuit has not addressed the question of whether a person**
> **has a liberty interest in not being classified as a sex offender. But**
> **other circuits that have considered the issue have held that**
> **prisoners do have such a liberty interest.** *See Renchenski v.*
> *Williams*, 622 F.3d 315, 326 (3d Cir. 2010) (holding that prisoners
> have a liberty interest in not being labeled as a sex offender and forced
> into treatment, and thus are entitled to adequate process before prison
> officials take such action); *see also Kirby v. Siegelman*, 195 F.3d
> 1285, 1291 (11th Cir. 1999) (per curiam) (holding that a convicted
> attempted murderer "retains a 'residuum of liberty' that would be
> infringed by classification as a sex offender without complying with
> minimum requirements of due process") (quoting *Vitek v. Jones*, 445
> U.S. 480, 491 (1980)); *Neal v. Shimoda*, 131 F.3d 818, 829-30 (9th
> Cir. 1997).

*Id.* (emphasis added). Thus, contrary to Defendant's argument, the Sixth Circuit went on

to explicitly find that the District Court erred in dismissing the plaintiff's procedural due

process claim pursuant to 28 U.S.C. § 1915(e)(2)(B), stating:

> We need not consider the merits of this issue of first impression. At
> this juncture, the district court is best positioned to consider this issue
> in the first instance. **Still, at the motion to dismiss stage,**
> **considering the foregoing authorities, Harper's complaint**
> **contains sufficient factual matter to support a plausible claim that**
> **his procedural-due-process rights were violated when the**
> **defendants classified him as a sex offender.** The district court
> therefore erred by summarily dismissing this claim.

*Id.* (emphasis added).

Moreover, on remand, this Court explicitly noted that the Sixth Circuit's decision

in *Harper I* "alone [was] enough to defeat" the defendants' motion to dismiss the plaintiff's

19

procedural due process claim.  *Harper v. Arkesteyn*, No. 19-11106, 2022 WL 356733, at *2 (E.D. Mich. Feb. 4, 2022).  Thus, *Harper I* simply does not stand for the proposition that classification as a sex offender *alone* cannot violate a protected liberty interest.[15]

Nor is Fuller's procedural due process claim necessarily limited to his allegation that Roush classified him as a sex offender, as Fuller also raises a Fourteenth Amendment due process challenge to Roush's alleged recommendations that he be "involuntarily treated and forcibly committed" to the sex offender unit, and required to complete MSAPP. (ECF No. 1, PageID.8-9).  Fuller further clarifies the point in his response brief when he notes that his procedural due process claim is based on the "stigma ***and treatment requirement***" that went with being classified as a sex offender within the MDOC.  (ECF No. 26, PageID.341) (emphasis added).  Fuller claims that he was twice denied parole when he refused to complete MSAPP.  (*Id.*).  Defendants argue that these claims fail for two reasons: (1) Roush was not personally responsible for Fuller's sex offender classification and/or the recommendations as to his unit placement and that he complete MSAPP; and (2) Fuller was not actually *compelled* to complete sex offender treatment.  (ECF No. 24,

---

[15] The Court recognizes that there is some tension between the Sixth Circuit's decision in *Harper I* and this Court's ruling on the defendants' motion to dismiss on remand in that case – on the one hand – and this Court's decision in *Harper II*, in which it considered Harper's allegation that "his classification as a sex offender, ***coupled with mandated [MSAPP],*** triggered a liberty interest from the Due Process Clause itself requiring procedural protections.  *Harper II*, 2022 WL 2338578, at *13 (emphasis in original).  However, the procedural posture of *Harper II* was quite different than that of the instant case; in *Harper II*, the court was ruling on the plaintiff's motion for partial summary judgment – and considering evidence in the record demonstrating how his refusal to participate in MSAPP affected his parole status – whereas here, the Court is ruling on Defendants' motion to dismiss *at the pleading stage*.  The specific language in *Harper I* discussed above makes clear that, at the motion to dismiss stage, allegations that the defendants violated the plaintiff's procedural due process rights by classifying him as a sex offender can state a plausible claim for relief.

PageID.318-20).   For the reasons set forth below, the Court is not persuaded by these arguments.

With respect to Roush's personal involvement,[16] it is true that Fuller's own allegations make clear that the sex offender classification was initially assigned to him "during the intake process" in 2018 – and he was recommended for MSAPP and transferred to STF around the same time – by someone other than Roush.  (ECF No. 1, PageID.2, 3). Thus, there can be no real dispute that Roush did not make the original classification decision or MSAPP recommendation.  However, Fuller further alleges that, when he went before the parole board for an interview in July 2021, "confusion" was expressed about why he had been classified as a sex offender and MSAPP had been recommended, and Fuller was told that this "error would be taken care of …."  (*Id.*, PageID.4).  It was only later, after Roush conducted her psychological evaluation of Fuller in October 2021 and sent her report to the parole board – in which she allegedly recommended that he be "continued to be involuntarily treated and forcibly committed to a mental health residential treatment program and unit for criminally sexually deviant mentally ill inpatients" – that he was twice denied parole.  (*Id.*, PageID.4, 6, 9).

In summary, then, Fuller alleges that: (1) he was advised prior to Roush's psychological evaluation that the MSAPP recommendation was an "error" and that parole would be granted in December 2021; and (2) after Roush's report was prepared, he was

---

[16] Under § 1983, in order to demonstrate liability as to any particular defendant, a plaintiff must make a clear showing that each defendant was personally involved in the activity that forms the basis of the complaint.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

twice denied parole because of his refusal to participate in MSAPP.  Taking Fuller's allegations as true, as the Court must at the motion to dismiss stage, *see Erickson*, 551 U.S. at 94, Fuller has alleged sufficient personal involvement on the part of Roush to state a claim against her for violation of his procedural due process rights.

Defendants also argue that Fuller's procedural due process claim fails because he was not actually *required* to complete sex offender treatment.[17]  (ECF No. 24, PageID.318-20).  Defendants suggest that Fuller admits in his complaint that he was *not* forced to participate in MSAPP; indeed, he alleges he repeatedly refused to participate and that, inexplicably, in September 2022, this requirement was waived.  (*Id.*, PageID.319) (citing ECF No. 1, PageID.3-4, 6-7).  However, Fuller also alleges that he was specifically told – as far back as April 2020 – that he "would not go home without taking [MSAPP]."  (ECF No. 1, PageID.3).  Again, then, at the motion to dismiss stage, viewing Fuller's complaint with the leniency afforded *pro se* pleadings, he has sufficiently alleged that, at least until the September 2022 waiver, it was communicated to him that he was required to complete MSAPP in order to be paroled.

Defendants also claim that "[o]ther than allegedly affecting the possibility of parole," Fuller alleges no material facts showing that he "suffered [any] negative consequences for refus[ing] to participate" in MSAPP.  (ECF No. 24, PageID.319; ECF

---

[17] As set forth above, Defendants argue that "it is only classification as a sex offender, *combined with* mandatory sex offender treatment, that has been found to create a protected liberty interest by some courts, not the classification alone."  (ECF No. 24, PageID.318) (emphasis in original) (citing *Harper II*).  The court has already explained that this argument misapprehends *Harper II's* holding. *See supra* at 18-20.

No. 31, PageID.401).  Defendants further point out that, in his complaint, Fuller states several times that Roush's report "negatively affected his parole eligibility, not prevented it entirely."  (ECF No. 24, PageID.320) (citing ECF No. 1, PageID.5-7, 9).  However, Fuller clearly alleges in his complaint that, in both 2021 and 2022, it was his refusal to participate in MSAPP that resulted in the denial of parole.  Specifically, he alleges that in August 2021, he "was classified as refuse/decline status for [MSAPP] by Vicki Roush without notice or hearing or interview[,]" which is what led to the parole board's one-year deferral of consideration for parole.  (ECF No. 1, PageID.4).  And, in May 2022, he learned that he "was scored a negative 1 point for refusing a psychological program [MSAPP][,]" which directly led to him "being 1 point shy of being a high probability of parole instead of average probability …."  (*Id.*, PageID.6).  Thus, while Roush's psychological evaluation might not have "prevented [] entirely" Fuller's parole, as Defendants assert (ECF No. 24, PageID.320), Fuller alleges that Roush's report had a negative impact on his parole eligibility and, therefore, his procedural due process claim against Roush should not be dismissed at this stage.[18]

_____

[18] Defendants also argue that many of Fuller's claims – including his procedural due process claim – are barred by the doctrine of qualified immunity.  (ECF No. 24, PageID.328-32).  This doctrine insulates state actors from liability in close-call situations.  *See Saucier v. Katz*, 533 U.S. 194, 206 (2001) (explaining that the defense is intended to protect state actors who must operate along the "hazy border" that divides acceptable from unreasonable conduct).  Once the qualified immunity defense is raised, at the motion to dismiss stage, the test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's act violated a constitutional right that was clearly established at the time.  *See Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 898 (6th Cir. 2019).  A right is clearly established when "reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered."  *Bell v. City of Southfield, Mich.*, 37 F.4th 362, 367 (6th Cir. 2022) (citing *Cunningham v. Shelby Cnty., Tenn.*, 994 F.3d 761, 765 (6th Cir. 2021)).

(2)     *Violation of Fuller's Substantive Due Process Rights*

Fuller next alleges that his Fourteenth Amendment right to substantive due process

was violated in this case.  Substantive due process "bar[s] certain government actions

regardless of the fairness of the procedures used to implement them."  *Guertin v. State*, 912

F.3d 907, 918 (6th Cir. 2019) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  It

"serves the goal of preventing governmental power from being used for purposes of

oppression, regardless of the fairness of the procedures used."  *Pittman v. Cuyahoga Cnty.*

*Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v.*

*Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).  Specifically, "[s]ubstantive due process

'prevents the government from engaging in conduct that shocks the conscience or interferes

---

Here, Defendants argue that it was not clearly established at the time of the events in question "that completing a psychological evaluation using a Static-99R and the STABLE-2007 after making a finding that the prisoner committed a sexual assault by a preponderance of the evidence, would result in a violation of [Fuller's] constitutional rights, even if the prisoner was acquitted of the conduct."  (ECF No. 24, PageID.330).  While the United States Supreme Court has repeatedly instructed courts "not to define clearly established law at a high level of generality," *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (internal quotations omitted), Defendants are doing just the opposite – drilling down to too fine a degree of particularity – which is also improper.  *See Rhodes v. Michigan*, 10 F.4th 665, 679 (6th Cir. 2021) (explaining that the plaintiff need not identify a case "on all fours" with his own to form the basis of a "clearly established right," and that defining the involved right in an "overly specific" manner is as improper as defining it at too "high [a] level of generality.").  In essence, Fuller alleges in his complaint that, at the time of his very first interaction with Roush, in April 2020, she had already determined he "was a sex offender"; and that, when tasked with conducting a psychological evaluation of him in October 2021, she "called [him] a rapist" and intentionally included in her report "fabricated and falsified" information so that he would be required to complete MSAPP.  (ECF No. 1, PageID.4, 7, 8).  Given these allegations, as well as the fact that the Sixth Circuit has repeatedly cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity" because "development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law[,]" the Court finds it inappropriate to dismiss Fuller's due process claims on qualified immunity grounds at this stage of the proceedings.  *Hart v. Hillsdale Cnty., Mich.*, 973 F.3d 627, 635 (6th Cir. 2020) (internal quotations omitted).

with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *U.S. v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)). For example, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

In this case, Defendants frame Fuller's substantive due process claim as a challenge to Roush's use of the Static-99R and STABLE-2007 assessments during the psychological evaluation. (ECF No. 24, PageID.322-23). Defendants proceed to argue that Roush was justified in using the Static-99R assessment tool because it "has moderate accuracy in ranking offenders according to their relative risk for sexual recidivism and is widely accepted by the scientific community and by applied evaluators." (*Id.*, PageID.322) (citing ECF No. 1, PageID.48). And, regarding the STABLE-2007 assessment tool, Defendants point out that Roush noted that the test "produces estimates of stable dynamic risk based upon the number of stable dynamic risk factors present in one individual." (*Id.*). Defendants argue, then, that where the state has a legitimate interest in protecting members of the community from future sex offenses, the overall use of tools designed to assess an

25

individual's risk of committing future sex offenses simply cannot be viewed as "conscience-shocking." (*Id.*).

But Fuller's substantive due process claim is different than Defendants' characterization of it; Fuller alleges that Roush violated his rights "by planting false and fraudulent evidence in a clinical report framing [him] for sex crimes that [he] did not commit and submitting that false clinical report to the Michigan Parole Board for review …." (ECF No. 1, PageID.9).  In support of his claim that Roush's conduct in this respect "shocks the conscience," Fuller alleges elsewhere in his complaint that, at the time he first met Roush, in April 2020, she had already determined he "was a sex offender"; that, when tasked with conducting a psychological evaluation of him in October 2021, she "called [him] a rapist" and included in her report "fabricated and falsified" information; and that she acted with "evil" and "malicious" intent in recommending he be required to complete MSAPP.  (*Id.*, PageID.4, 7, 8).  As this Court previously recognized, upon remand from the Sixth Circuit in *Harper I*, "at least at the pleading stage, classifying [a prisoner] as a sex offender and requiring him to take sex offender programming to be eligible for parole without providing him an administrative hearing, can be considered an 'arbitrary or capricious action that 'shocks the conscience,' in violation of his substantive due process rights." *Harper*, 2022 WL 356733, at *3 (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992)).  Thus, Fuller's substantive due process claim should not be dismissed at this early stage of the proceedings.

(3)     *Violation of the Fifth Amendment*
*Right Against Self-Incrimination*

In his complaint, Fuller also alleges that Roush violated his Fifth Amendment rights by "mandating that [he] be a witness against [him]self for sex crimes that [he] did not commit in a clinical evaluation for treatment purposes and in treatment itself and for Michigan Parole Board information and review." (ECF No. 1, PageID.9).  In their motion to dismiss, Defendants argue that Fuller's Fifth Amendment claim fails for several substantive reasons.[19]  (ECF No. 24, PageID.324-26).  In his response brief, Fuller does not even address – let alone rebut – Defendants' arguments.  At any rate, for the reasons set forth below, the Court agrees that dismissal of this claim is appropriate.

The Fifth Amendment, as applied to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V.  The right against self-incrimination applies not only in criminal trials, but whenever the state seeks to compel an individual to be a witness against himself and divulge information that might incriminate that person in future criminal

---

[19] Defendants also argue that Fuller lacks standing to raise this claim.  (ECF No. 24, PageID.305-06).  As set forth above, Article III of the Constitution limits federal courts to adjudicating actual cases or controversies.  *See* U.S. Const. Art. III, § 2.  To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff must establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct, and (3) must seek a remedy that is likely to redress that injury. *See Spokeo, Inc.*, 578 U.S. at 338.  For Fuller to suffer the requisite constitutional injury for violation of his Fifth Amendment right against self-incrimination, compelled incriminating statements must be used against him in a *criminal proceeding*.  *See McKinley v. City of Mansfield*, 404 F.3d. 418, 430-31 (6th Cir. 2005) (citing *Chavez v. Martinez*, 538 U.S. 760, 769 (2003)).  Here, where Fuller does not allege that any compelled statements were used against him in any other criminal proceeding, he has failed to allege an injury in fact and, thus, lacks standing to raise this claim.  *See Spokeo*, 578 U.S. at 339.  While that alone is enough reason to dismiss this claim, for the sake of completeness the Court will address this claim's underlying merits.

proceedings. *See Minnesota v. Murphy*, 465 U.S. 420, 426 (1984). However, where "a person is never made to be a 'witness' against himself in a criminal proceeding, he cannot demonstrate any violation of this Fifth Amendment right." *Smith v. Aims*, No. 20-12013, 2022 WL 866398, at *6 (E.D. Mich. Mar. 23, 2022).

To begin with, Fuller does not allege that he was compelled to testify against himself in a *criminal prosecution*. Rather, he merely alleges that Roush questioned him about conduct for which he was acquitted during a *psychological evaluation*.[20]  (ECF No.1, PageID.5, 9). Thus, even if true, Roush's actions would not equate to a Fifth Amendment violation. *See Smith*, 2022 WL 866398, at *6. Moreover, because Fuller was acquitted of the sexual assault charges at trial, the double jeopardy provisions of both the United States and Michigan constitutions preclude him from being retried for the same crimes. *See People v. Szalma*, 487 Mich. 708 (2010). Because he cannot be charged with a crime, or be subjected to a new criminal trial on the acquitted charges, the possibility that any compelled admissions regarding these charges is far too remote to trigger the Fifth Amendment's protections against self-incrimination. *See Rice v. Mich. Parole Bd.*, No. 1:05-CV-549, 2005 WL 2297463, at *4 (W.D. Mich. Sept. 21, 2005).

Fuller also alleges that he was compelled to be a witness against himself "for Michigan Parole Board information and review." (ECF No. 1, PageID.9). Essentially,

---

[20] Fuller also alleges that he was required to be a "witness against [him]self" during sex offender "treatment itself[.]" (ECF No. 1, PageID.9). However, Fuller repeatedly asserts that he refused to participate in MSAPP or any other sex offender treatment. (*Id.*, PageID.4, 6-7, 9). Thus, Fuller's own statements belie his allegation that he was compelled to testify against himself during the course of sex offender treatment.

Fuller claims that his refusal to admit to the conduct for which he was acquitted negatively affected his parole eligibility.  (*Id.*, PageID.5).  Notably, however, Fuller does not allege that he was rendered *ineligible* for parole as a result of his failure to admit responsibility for acquitted conduct.  (*Id.*, PageID.5-7, 9).  The United States Supreme Court has held that if a refusal to admit guilt does not render a prisoner automatically ineligible for parole, any pressure to admit guilt to improve the chance of obtaining parole is not sufficiently compulsory to implicate the Fifth Amendment.  *See McKune v. Lile*, 536 U.S. 24, 44 (2002) ("States may award good-time credits and early parole for inmates who accept responsibility because silence in these circumstances does not automatically mean the parole board, which considers other factors as well, will deny them parole."); *see also Pannell v. Mich. Parole Bd.*, No. 1:08-cv-128, 2008 WL 2224267, at *4 (W.D. Mich. May 1, 2008) (finding that plaintiff's Fifth Amendment right against self-incrimination was not implicated when he was denied parole "because he refused to admit guilt to … [a] charge for which he is innocent and was acquitted by a jury"); *Hawkins v. Morse*, No. 98-2062, 1999 WL 1023780, at *2 (6th Cir. Nov. 4, 1999) ("[I]t cannot be said that the alleged pressure to admit that he committed the crime for which he is incarcerated in order to improve his chances for parole forces Hawkins to incriminate himself in violation of the Fifth Amendment.").

For all of these reasons, Fuller's Fifth Amendment self-incrimination claim lacks merit and should be dismissed.

### (4) Violation of Fuller's Right to a Jury Trial

Fuller also alleges that Roush violated his right to a jury trial under the Fifth, Sixth,

and Fourteenth Amendments when she considered conduct for which he had been acquitted in scoring the Static-99R assessment tool.  (ECF No. 1, PageID.7-8).  Essentially, Fuller alleges that, despite the jury's verdict acquitting him of sexual assault charges, he was "treated as if found guilty of those exact charges by Vicki Roush and the MDOC which resulted in unlawful forcible involuntary sex offender mental health treatment …."  (ECF No. 27, PageID.353).  This claim is without merit for several reasons.

First, as Defendants correctly point out, the reservation of jury power only applies if judicial factfinding includes an element that increases the punishment above what is legally proscribed.  (ECF No. 24, PageID.308) (citing *Alleyne v. U.S.*, 570 U.S. 99, 108 (2013)).  This includes facts that increase the maximum penalty or the mandatory minimum penalty for an offense.  *Alleyne*, 570 U.S. at 114-17.  However, factfinding in indeterminate sentencing schemes does "not pertain to whether the defendant has a legal *right* to a lesser sentence" and, thus, do not impinge on the role of the jury.[21]  *Blakely v. Washington*, 542 U.S. 296, 309 (2004) (emphasis in original).  "[T]he Sixth Amendment … does not require a jury to find every fact that the government relies on to adjust the terms of a prisoner's confinement …."  *U.S. v. Haymond*, 588 U.S. 634, 653 (2019).  Such is the case here; because Roush's clinical assessment did not alter Fuller's judicially determined sentence, it did not infringe on the power of the jury.

Second, the Constitution allows for consideration of acquitted conduct so long as

---

[21] Since the minimum and maximum range of Fuller's sentence had already been judicially determined, the decision to release Fuller prior to his maximum sentence rested solely with the parole board.  This fits the United States Supreme Court's definition of an indeterminate sentencing scheme.  *See Robinson v. Woods*, 901 F.3d. 710, 717 (6th Cir. 2018).

the conduct has been proven by a preponderance of the evidence. *See U.S. v. White*, 551 F.3d 381, 384-85 (6th Cir. 2008); *see also U.S. v. Davis*, 820 F. App'x 389, 391 (6th Cir. 2020). At the time of Fuller's original sentencing, this is exactly what the sentencing court did. (ECF No. 1, PageID.21) ("In the present case, the trial court's comments at sentencing indicate that the court based [Fuller's] sentences, at least in part, on conduct of which the jury acquitted him."). Specifically, the sentencing court found, by a preponderance of the evidence, that Fuller had committed both sexual assaults for which he had been acquitted. (*Id.*). The sentencing court then took those facts into account at sentencing, providing a judicial determination that Fuller committed the sexual assaults under the required standard. (*Id.*). This was not inappropriate.[22] Thus, even if Roush considered conduct for which Fuller had been acquitted in conducting her psychological evaluation, such factfinding by a corrections official simply does not infringe on the traditional role of the jury or alter the terms of Fuller's sentence. *See Blakely*, 542 U.S. at 309. As such, Fuller fails to state a valid claim for violation of his constitutional right to a jury trial.

### (5)  *Violations of the Eighth Amendment*

In his complaint, Fuller also alleges that Roush violated his Eighth Amendment right

---

[22] That Fuller's original sentence was later vacated by the Michigan Court of Appeals does not change the analysis. The validity of the factual finding of the sentencing court by a preponderance of the evidence was not challenged or addressed on appeal. Rather, Fuller's sentence was reversed due to the Michigan Supreme Court's ruling in *People v. Beck*, 504 Mich. 605 (2019), that federal due process prevents courts from considering acquitted conduct at sentencing. *Beck's* holding is inconsistent with both Sixth Circuit and United States Supreme Court cases, which have found to the contrary. *See Davis*, 820 F. App'x at 391; *McClinton v. U.S.*, 143 S. Ct. 2400, 2405 (2023) (Alito, J., concurring) (finding that it is still clearly established that courts can consider acquitted conduct so long as the conduct has been proven by a preponderance of the evidence).

to be free from cruel and unusual punishment: (1) by classifying him as a sex offender and having him placed in a unit with other sex offenders; (2) by disclosing his confidential mental health information to another inmate; and (3) by providing inadequate psychological treatment.  (ECF No. 1, PageID.5, 8).  For the reasons set forth below, the Court finds no merit to Fuller's Eighth Amendment claims.

*(a)    Legal Standards*

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981) (internal quotations omitted).  The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain[.]"  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348.  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society[.]'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement

claim." *Id.*

The deliberate indifference standard includes both objective and subjective components. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Helling v. McKinney*, 509 U.S. 25, 35-37 (1993). To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety[.]" *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

> (b)     *Classification as Sex Offender and Placement in Sex Offender Unit*

Fuller first alleges that Defendants violated the Eighth Amendment by classifying him as a sex offender and transferring him to a unit with other prisoners who were also recommended to participate in MSAPP. (ECF No. 1, PageID.2-3). However, Fuller does not allege that he was deprived of a necessity of life, or that Defendants were deliberately indifferent to a serious risk to his health or safety. Under virtually identical circumstances, the Sixth Circuit has held that such allegations fail to state a claim for violation of the Eighth Amendment. *See Harper I*, 2020 WL 4877518, at *4.

Moreover, Fuller does not allege any actual physical harm as a result of Defendants' actions in allegedly misclassifying him and placing him in a sex offender unit.  Even if his complaint is read to allege emotional or mental injuries, he cannot bring an Eighth Amendment claim stemming from such actions where he did not allege that they caused a physical injury.  *See, e.g., Yoder v. Stevenson*, No. 20-12992, 2021 WL 6973839, at *5 (E.D. Mich. Dec. 20, 2021) (prisoner failed to state Eighth Amendment claim where he alleged mental and emotional injuries, but no physical injury) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008)).  Thus, this aspect of Fuller's Eighth Amendment claim should be dismissed.

### (c)    Disclosure of Mental Health Information

Fuller also alleges that Roush violated his Eighth Amendment rights when she disclosed his confidential mental health information to another inmate, Jacob Russo ("Russo").  (ECF No. 1, PageID.8).  Specifically, Fuller alleges that Roush used Russo as an "unofficial middleman," rather than responding directly to Fuller's requests for a hearing, review, or explanation regarding her diagnosis, clinical findings, and recommendations.  (*Id.*).  Fuller alleges that Roush took these actions "with deliberate indifference to the possibility of assault and stigmatization by other inmates," although he does not allege he was actually physically assaulted.  (*Id.*).

As set forth above, in order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834).  Under this

standard, courts have repeatedly found that the disclosure of a prisoner's private medical information simply fails to state an Eighth Amendment claim. *See, e.g., Townsend v. Reaume*, No. 1:13-cv-729, 2013 WL 3872173, *3 (W.D. Mich. July 25, 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)); *Weatherspoon v. Toner*, No. 2:13-cv-254, 2014 WL 4385432, at *1, 6 (W.D. Mich. Sept. 3, 2014). That is the case here, where Fuller has failed to allege any facts showing that he faced a sufficiently serious risk to his health or safety, or that he was actually threatened or assaulted.[23] Moreover, other than alleging – in conclusory fashion – that Roush acted "with deliberate indifference" to his safety in using Russo as a "middleman" (ECF No. 1, PageID.8), Fuller fails to plead any specific facts showing that Roush took actions knowing that they would pose a "substantial risk of serious harm" to Fuller, yet "recklessly disregarding that risk." *See Farmer*, 511 U.S. at 836. His threadbare recitals of an Eighth Amendment claim are insufficient. *See Iqbal*, 556 U.S. at 678. For these reasons, this aspect of Fuller's deliberate indifference claim also should be dismissed.

### (d)   Inadequate Psychological Treatment

Finally, Fuller also appears to argue that Roush provided inadequate psychological treatment when she planted "false and fabricated" evidence in the report she prepared, misdiagnosed him as a sex offender, and recommended that he be treated accordingly. (ECF No. 1, PageID.5, 8). However, mere malpractice does not violate the Eighth

---

[23] Indeed, Fuller does not allege that disclosure of his confidential mental health information resulted in an actual physical injury. As set forth above, *supra* at 34, his Eighth Amendment claim fails for this reason too. *See Harden-Bey*, 523 F.3d. at 795; *Yoder*, 2021 WL 6973839, at *5.

Amendment.  *See Estelle*, 429 U.S. at 106.  Therefore, Fuller must show that Roush's care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to meet the objective component of deliberate indifference.  *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005)).

Fuller's disagreement with Roush's medical opinion and recommendation does not raise a valid Eight Amendment claim.  *See Rhinehart*, 894 F.3d at 740.  Fuller also fails to plead any facts showing that Roush's evaluation was "so grossly incompetent" or so grossly "inadequate" as to "shock the conscience" or "be intolerable to fundamental fairness."  *Id.* at 737.  To the contrary, the Static-99R and STABLE 2007 forms attached to his complaint shows that they were scored consistent with their guidelines, as well as facts contained in the police report.  (ECF No. 1, PageID.50-55, 63-71).  Thus, this aspect of Fuller's Eighth Amendment medical deliberate indifference claim should be dismissed.

### (6)  *Violation of the Equal Protection Clause*

Next, Fuller alleges that Roush violated his rights under the Equal Protection Clause "by administering and manipulating the unconstitutional Static-99R psychological assessment for sex offender recidivism that has Racial Bias directly built in the scoring process, on [him] an African American …."  (ECF No. 1, PageID.9).  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a directive that all persons similarly situated should be treated alike.  U.S. Const. amend. XIV, § 1; *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state a valid

equal protection claim requires showing that (1) the government treated the plaintiff disparately as compared to similarly situated persons, and (2) that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Further, to establish an equal protection violation, a plaintiff must establish more than differential treatment alone; a discriminatory intent or purpose is required. *See Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019).

As set forth above, Fuller alleges that Roush's use of the Static-99R on him violates the Equal Protection Clause because he is African American. (ECF No. 1, PageID.5-6, 9). Defendants argue that this claim should be dismissed because Fuller failed to allege sufficient facts to show that he was targeted because of his race; that he is similarly situated to any Caucasian prisoner scored using the Static-99R; or that Roush acted with any alleged racially discriminatory intent or purpose. (ECF No. 24, PageID.326-27). In his response to Defendants' motion, Fuller does not rebut this argument at all; rather, he apparently relies on the allegations in his complaint that the scoring instructions for the Static-99R state that African American offenders score somewhat higher than Caucasian offenders on the assessment. (ECF No. 1, PageID.5-6, 9, 64). However, the scoring instructions relied on by Fuller go on to state that three studies "did not find a statistically significant difference between [these] groups." (*Id.*, PageID.64). Courts have found that generalized allegations that race plays a part in risk assessment tools – such as those made by Fuller in this case – are insufficient to state an equal protection claim. *See, e.g., Newell v. Fikes*, No. 2:22-cv-53, 2023 WL 2543092, at *4 (S.D. Ga. Feb. 21, 2023). Thus, Fuller's equal

protection claim should be dismissed.

### (7)   Fuller's "Privileges or Immunities" Claim

Finally, Fuller alleges that because the Static-99R is based on research from other countries (namely, Canada, Australia, and the United Kingdom), using this tool on an American citizen violates the privileges or immunities clause of the Fourteenth Amendment.  (ECF No. 1, PageID.9).  This clause provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States[.]"  U.S. Const. amend. XIV, § 1.  It has been narrowly construed, "extending to the right to petition Congress, to vote for national officers, to enter public lands, to be protected against violence while in the custody of a United States Marshall [sic], and to inform federal authorities of the violation of federal law."  *Snyder v. Smith*, 7 F. Supp. 3d 842, 857 (S.D. Ind. 2014) (citing *Murphy v. Mount Carmel High Sch.*, 543 F.2d 1189, 1192 n.2 (7th Cir. 1976)).

In their motion, Defendants argue that Fuller's allegations fail to state a claim under the privileges or immunities clause because "freedom from the application of international research is not a recognized right under this clause."  (ECF No. 24, PageID.327).  Fuller did not respond at all to Defendants' argument with respect to this claim, and the Court has found no case law suggesting that Fuller's privileges or immunities argument has any merit whatsoever.  As such, this claim should be dismissed.  *See Thomas v. Stevens*, No. 1:22-cv-160, 2022 WL 3367412, *14 (W.D. Mich. Aug. 16, 2022).

### C.   Fuller's Motion for Partial Summary Judgment

#### 1.   Standard of Review

Lastly, as set forth above, on September 19, 2023, Fuller filed a motion for partial summary judgment on his due process and self-incrimination claims for money damages. (ECF No. 27).   Federal Rule of Civil Procedure 56 provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *see also Pittman*, 640 F.3d at 723.   A fact is material if it might affect the outcome of the case under governing law.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.   *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of informing the court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).   "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"   *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

A moving party with the burden of proof (typically the plaintiff) faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  As set forth above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial.  "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted).   Accordingly, summary judgment in favor of the plaintiff "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Harris v. Kowalski*, No. 1:05-cv-722, 2006 WL 1313863, at *3 (W.D. Mich. May 12, 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

> 2.    *Analysis*

Here, Fuller argues that partial summary judgment should be granted in his favor against Roush on three of his claims: violation of his Fourteenth Amendment right to procedural due process, Fourteenth Amendment right to substantive due process, and Fifth Amendment self-incrimination claims.  (ECF No. 27).   However, as set forth above, because Fuller is the plaintiff in this case, to prevail on his partial summary judgment motion he must make a showing "sufficient for the court to hold that no reasonable trier of fact could find other than for [him]." *Calderone*, 799 F.2d at 259.  Here, where there remain many genuine issues of material fact as to whether there were improprieties with respect to the psychological evaluation conducted by Roush (as well as what impact, if any, Roush's report had on Fuller's parole deferrals), Fuller's motion for partial summary

40

judgment should be denied.  This is particularly true where no discovery has taken place in this case.  *See Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (summary judgment motion should not be granted until the non-moving party has had an opportunity for discovery).  For all of these reasons, Fuller's motion for partial summary judgment should be denied.

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss **(ECF No. 24)** be **DENIED IN PART** as to Fuller's procedural and substantive due process claims, and **GRANTED IN PART** in all other respects.  Additionally, **IT IS RECOMMENDED** that Fuller's Motion for Partial Summary Judgment **(ECF No. 27)** be **DENIED**.

Dated: June 17, 2024                         s/David R. Grand
Ann Arbor, Michigan                       DAVID R. GRAND
                                                      United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *U.S. v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some

issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 17, 2024.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager