UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD R. FULLER,

                              Civil Action No. 22-12531

                    Plaintiff,

                              Matthew F. Leitman
v.                            United States District Judge

VICKI ROUSH,                  David R. Grand
                              United States Magistrate Judge

                    Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S RENEWED MOTION TO DISMISS (ECF No. 37)

I.      REPORT

    A.      Procedural History

On October 20, 2022, *pro se* plaintiff Gerald Fuller ("Fuller"), who at the time was incarcerated at the Central Michigan Correctional Facility ("STF") in St. Louis, Michigan,[1] filed this civil rights action pursuant to 42 U.S.C § 1983.[2]  (ECF No. 1).  Named as defendants were the Michigan Department of Corrections ("MDOC") and Vicki Roush ("Roush"), a psychologist employed by the MDOC.  (*Id.*).

Broadly speaking, Fuller alleges in his complaint that although he was charged in state court with both sex-related crimes and non-sex-related crimes, he was convicted of

---

[1]     On September 21, 2024, Fuller was discharged from parole.  *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=202890 (last accessed August 13, 2025).

[2] On May 22, 2023, this case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b).  (ECF No. 16).

only non-sex-related crimes, but was nevertheless improperly "classified as a sex offender" once in the MDOC's custody and, as a result, was transferred to STF so that he could complete a sex offender treatment program.  (*Id.*, PageID.2, 3).  Fuller further alleges that, after a parole board interview in July 2021, the parole board asked Roush to conduct a psychological evaluation of Fuller and provide a recommendation regarding his risk of reoffending.  (*Id.*, PageID.4-5, 47).  According to Fuller, Roush "fabricated and falsified this evaluation with false information and sent a false clinical report to the Parole Board framing [him] for a sex offense that [he] did not commit."  (*Id.*, PageID.4).  Fuller thus alleges that, as a result of Roush's actions – as well as the fact that he had been misclassified as a sex offender on initial intake into MDOC custody – he was wrongly denied parole. (*Id.*, PageID.4-5).  In his complaint, Fuller pled ten separate constitutional claims against the MDOC and Roush – including claims for violations of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights – and he sought injunctive relief, declaratory relief, and money damages.

On September 11, 2023, the defendants moved to dismiss Fuller's complaint.  (ECF No. 24).  On June 17, 2024, the undersigned issued a Report and Recommendation ("R&R"), which, in relevant part, recommended that all of Fuller's claims be dismissed *except* for his substantive and procedural due process claims to the extent those claims sought money damages from Roush in her personal capacity.  (ECF No. 32).[3]  On July 1,

---

[3] The R&R also recommended that Fuller be allowed to proceed with his substantive and procedural due process claims for injunctive/declaratory relief against the MDOC.  (ECF No. 32). However, because Fuller was released from prison on September 21, 2023, and his term of parole

2024, the defendants filed objections to the R&R.  (ECF No. 33).  On September 30, 2024, the Honorable Matthew F. Leitman issued an Order adopting in part the recommended disposition of the R&R and granting Roush leave to file a renewed motion to dismiss directed at Fuller's remaining claims.  (ECF No. 34).  Moreover, Roush was specifically given permission to raise, in such a motion, "any arguments and defenses she deems appropriate, including a defense of qualified immunity." (*Id.*, PageID.486).

Subsequently, on November 8, 2024, Roush filed a lengthy and detailed Renewed Motion to Dismiss Fuller's substantive and procedural due process claims against her for monetary relief.  (ECF No. 37).  Fuller filed a response that was less than five pages in length and cited virtually no law (ECF No. 40), and Roush filed a reply (ECF No. 41).

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.  For the reasons discussed below, the Court recommends that Roush's motion to dismiss be granted.

### B.    The Allegations in Fuller's Complaint

The factual background of this case was described in detail in the undersigned's prior R&R.  (ECF No. 32, PageID.409-16).  Thus, the factual allegations discussed herein are limited to those relevant to Fuller's remaining claims against Roush.

---

ended on September 21, 2024, he is no longer in custody and therefore no longer subject to supervision by the MDOC.  (ECF No. 34, PageID.477).  Thus, Fuller's request for declaratory and injunctive relief became moot after the R&R's issuance and the Court has since dismissed that request.  (*Id.*, PageID.480-82).

1.     *Fuller's State Court Jury Trial, Conviction, and Sentence*

In brief, in 2018, Fuller was charged in the Wayne County Circuit Court with one count of assault with intent to commit sexual penetration, one count of assault with intent to commit criminal sexual contact, felonious assault, and resisting and obstructing a police officer.  (ECF No. 1, PageID.38).  A jury subsequently convicted Fuller of resisting and obstructing a police officer and the lesser-included offense of assault and battery.  *See People v. Fuller*, No. 345500, 2020 WL 359646, at *1 (Mich. Ct. App. Jan. 21, 2020).[4]  He was not convicted of any sexual assault crimes.  *Id.*

At sentencing, however, the trial court noted that it found, by a preponderance of the evidence, that Fuller had committed the charged sexual assault crimes, and it therefore considered that acquitted conduct in sentencing Fuller to 58 months to 15 years on the resisting and obstructing conviction, based on his status as a fourth habitual offender, and to time served on the assault and battery convictions.  *Id.* at *2.  On January 21, 2020, Fuller's sentence was overturned on appeal; however, the Court of Appeals did not specifically overturn the trial court's finding, by a preponderance of the evidence, that Fuller had committed a sexual assault.  *Id.* at *1-2.  Instead, the Court of Appeals remanded the case for resentencing without consideration of that matter.  *Id.*

On March 3, 2021, Fuller was resentenced to 46 months to 10 years for the resisting and obstructing charge, making his initial parole eligibility date December 16, 2021.  (ECF

---

[4] As this information is in the public record, the Court may consider it without converting Roush's motion to dismiss to one for summary judgment.  *See Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005).

No. 1, PageID.3, 24).   The resentencing court also ordered that Fuller's presentence information report ("PSI") remove any reference to the underlying facts of the charges for which he was acquitted.  (*Id.*, PageID.3, 18-19).

### 2. *Fuller's Complaints About His MDOC Classification*

Fuller alleges that upon his arrival at the MDOC in August 2018, he "was somehow classified as a sex offender" and, in approximately November 2018, was transferred to the Macomb Correctional Facility ("MRF").  (*Id.*, PageID.2-3).  Fuller does not allege that Roush was responsible for classifying him as a sex offender in this manner.  While at MRF, Fuller was told that, because of his classification, it had been recommended that he complete the Michigan Sexual Abuse Prevention Program ("MSAPP")[5], and he would be transferred to a prison where that program was available.  (*Id.*).  As a result, in approximately May 2019, Fuller was transferred to STF, where the MSAPP program was run by Roush.  (*Id.*, PageID.3).

Fuller alleges that, while at STF, he repeatedly attempted to convince Roush that he had been wrongly classified as a sex offender, but she refused to take any action to correct this alleged error.  (*Id.*).  In approximately April 2020, Fuller allegedly saw Roush in person and specifically asked her why he was in a sex offender unit; she allegedly replied "because [he] was a sex offender" and "promptly dismissed" him.  (*Id.*).

---

[5] At the time of Fuller's initial sentence in 2018, the recommended sex offender treatment programming was known as the Michigan Sex Offender Program ("MSOP").  Sometime between 2018 and 2022, however, the program's name was changed to MSAPP.  Thus, for ease of reference and consistency, the Court will refer to this program by its current name – MSAPP – despite the fact that Fuller was initially recommended for MSOP.

5

In his complaint, Fuller alleges that, at a parole board interview in July 2021, confusion was expressed about why he was recommended for MSAPP when he had "no sex crime or sex history or sex description." (*Id.*, PageID.4). Fuller alleges he was told that this "error would be taken care of and [he] would be home by [C]hristmas …." (*Id.*). However, Fuller alleges that, in October 2021, he received a copy of a parole board deferral, which stated as follows: "Following your recent parole consideration, the Parole Board has determined that additional information is necessary before reaching a final determination. This information has been requested. The final decision in your case will be delayed until this information has been received and reviewed." (*Id.*, PageID.46). The reason for deferral was: "A current psychological evaluation has been requested." (*Id.*).

### 3.    *Roush's Psychological Evaluation of Fuller*

At the parole board's direction, Roush conducted a Sexual Offender Risk Assessment ("SORA") of Fuller. (*Id.*, PageID.47-49). When asked to state her reason for conducting the SORA, Roush indicated: "The Parole Board is requesting a current psychological evaluation to determine the Offender risk of sexual re-offending." (*Id.*, PageID.47). In order to prepare her report,[6] Roush interviewed Fuller on October 10, 2021; she also reviewed his revised PSI report, his sexual offender treatment history, his medical and institutional files, and a copy of the police report for the 2018 offenses. (*Id.*, PageID.48, 70-71). In addition, Roush scored Fuller using two risk assessment tools – the

---

[6] According to Roush's report, Fuller was informed of the nature of the evaluation, that the parole board would receive a copy of her report, and that participation was of his own free will. (ECF No. 1, PageID.48). Roush's report states that Fuller agreed to participate, although Fuller denies this. (*Id.*, PageID.4, 48).

6

Static-99R and the STABLE-2007.[7]  (*Id*., PageID.47-55).  Roush scored Fuller's Static-99R based on demographic and criminal history information, which resulted in a score showing that he was at "above average risk" of being charged or convicted of a sexual offense.  (*Id.*, PageID.48, 54-55).  Roush also scored Fuller's STABLE-2007 by interviewing him and evaluating 13 different dynamic risk factors.  (*Id.*, PageID.48, 50-53).  The STABLE-2007 identified several areas of concern, including hostility toward women and a lack of concern for others.  (*Id.*).  Fuller's STABLE-2007 score indicated that he had a moderate risk of stable dynamic needs.  (*Id.*).

In his complaint, Fuller alleges that Roush's actions in conducting the psychological evaluation and preparing the SORA were inappropriate in numerous respects.  Specifically, Fuller alleges that:

> Ms. Roush fabricated and falsified this [psychological] evaluation with false information and sent a false clinical report to the Parole Board framing me for a sex offense that I did not commit.  Vicki Roush misdiagnosed me intentionally with evil intent and deliberate indifference to the facts at her disposal.  Ms. Roush performed psychological test[s] that are totally inappropriate for me to take.  Ms. Roush did a Sex Offender Risk Assessment on me and labeled me a 4a Sex Offender through the falsifying of the evaluation and manipulation of the psychological test[s].  The false evidence Ms.

---

[7] The scoring manual for the Static-99R states that use of this tool is appropriate where there is reason to believe an actual sex offense has occurred with an identifiable victim and the offender has been charged.  (ECF No. 1, PageID.63).  The manual further provides that the offender "need not have been convicted" of the sex offense in order to use the Static-99R tool.  (*Id.*).  Rather, it is to be used even if there is an acquittal, but only if, in the evaluator's opinion, a preponderance of evidence suggests that a sexual offense occurred against an identifiable victim (the scoring manual actually uses the terms "Balance of Probabilities" and "Preponderance of Evidence" interchangeably and defines them both as "more likely than not," or "at least 51% certainty").  (*Id*., PageID.63, 66-67, 69).  Acquittals are scored because research has found "that men acquitted of rape were more likely to be convicted of sex offen[s]es in the follow-up period than men who had been found guilty[.]"  (*Id.*, PageID.69).

Roush planted in the psychological evaluation and S.O.R.A. includes mentioning a "history of prior sex offender treatment" that does not exist. She also writes, "Please refer to his criminal record for detailed history of his [criminal sexual conduct]." Ms. Roush also states in the report, "Mr. Fuller was informed of the nature of this evaluation." This is all fabrication. Ms. Roush reports, "According to the Police report," but what she states is not [in] the police report at all. Ms. Roush fabricated the information that she attributed to the police report…. Ms. Roush misleadingly omits the fact that I was acquitted by jury trial of the allegations she attributes to me. Ms. Roush performed a STABLE-2007 psychological test on me that is designed for sex offenders of which I am not. Ms. Roush fabricated statements on the test to raise the score. Ms. Roush reports that I said to her that my mom uses substances on the weekends. Ms. Roush reports that my PSI reports that between 2005 and 2010 that I was not without incarceration for 2 years straight. Ms. Roush reports that I stated that I look at women for strictly sexual reasons. Ms. Roush reports that I have one victim who was an adult under the Deviant Sexual Preference category of the test. All of this is false and fabricated evidence planted in a clinical report that misdiagnoses me as a deviant mentally ill criminal sex offender patient. And this report was submitted to the Parole Board disguised as an accurate diagnosis and report of accurate evidence to be reviewed to make a final decision on parole. This fabrication affected my parole eligibility in a negative way ….

(*Id.*, PageID.4-5) (cleaned up). Fuller also alleges that, during the October 10, 2021 psychological evaluation, Roush "called [him] a rapist and asked [him] why [he] raped that woman." (*Id.*, PageID.7). When Fuller told her he had been acquitted of any alleged sexual conduct, Roush allegedly responded by saying that the police report said he "did it, and witnesses saw it." (*Id.*).

When Roush completed her evaluation, she prepared a report and forwarded it, along with the assessments, to the parole board. (*Id.*, PageID.47-58). Fuller claims that, as a result of Roush's report, which allegedly contained "false and fabricated evidence," he was denied parole. (*Id.*, PageID.5). Specifically, Fuller alleges that, on November 1,

2021, just weeks after Roush submitted her report, he received a "12-month continuance" with respect to consideration for parole.  (*Id.*).

Fuller further alleges that, in May 2022, he received his parole guideline score sheet in preparation for his next parole board interview, which was scheduled to take place in July 2022.  (*Id.*, PageID.6).  He claims he "was scored a negative 1 point for refusing a psychological program" – a program that he alleges was only required because of Roush's "misdiagnosis" of him in October 2021.[8]  (*Id.*, PageID.6, 57).  According to Fuller, this "1 point subtraction equaled out to [him] being 1 point shy of being a high probability of parole instead of average probability which negatively effected (sic) [his] parole eligibility …."  (*Id.*, PageID.6).

In August 2022, Fuller was again denied parole for an additional 12 months, this time in part because he refused to participate in psychological programming that had been "recommended or required" and in which he "chose not to be involved[.]"  (*Id.*, PageID.6, 60).  Fuller claims, then, that he was penalized for refusing "sex offender treatment" after being "misdiagnosed, mislabeled, and misclassified" by Roush when she prepared her October 2021 report.  (*Id.*, PageID.6).  Eventually, however, Fuller was paroled on September 21, 2023.  (ECF No. 29-2).

---

[8] Elsewhere in his complaint, however, Fuller alleges that, in *August* 2021, unbeknownst to him, Roush classified him as "refuse/decline status for [MSAPP] without notice or hearing or interview …." (ECF No. 1, PageID.4).  Although it is not clear from the face of the document referenced by Fuller that it was in fact Roush who indicated, in August 2021, that Fuller had refused or declined to participate in MSAPP (*id.*, PageID.44), even assuming the truth of Fuller's allegation in this respect, he could not have been scored negatively in terms of parole for refusing/declining this program *because of* Roush's alleged "misdiagnosis," as that did not occur until *October* 2021 (*id.*, PageID.47-49).

C. **Standard of Review**

In her renewed motion to dismiss, Roush argues that Fuller's remaining claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 37).  Such a motion tests a complaint's legal sufficiency.  Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to

sufficiently comport with basic pleading requirements.  *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to pleadings drafted by lawyers.  *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).  Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless[,]" *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead facts sufficient to show a redressable legal wrong has been committed."  *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

While a court generally may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss without converting it to one for summary judgment, "it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein."  *Bassett v. Nat''l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### D.    Analysis

As set forth above, Fuller's only remaining claims are his substantive and procedural due process claims for money damages against Roush in her personal capacity.  In her renewed motion to dismiss, Roush argues for the first time that she is entitled to quasi-

11

judicial immunity for her role in conducting a psychological evaluation and preparing a SORA at the direction of the parole board.[9]  (ECF No. 37, PageID.513-16).  In his response to Roush's motion, Fuller did not even attempt to rebut this argument.[10]  For the reasons set forth below, the Court finds that Roush's challenged actions are shielded by quasi-judicial immunity and that, as a result, Fuller's remaining claims for monetary damages against her should be dismissed.

### 1.   General Principles of Quasi-Judicial Immunity

Whether a defendant is entitled to immunity from a § 1983 action is a question of federal law.  *See Martinez v. California*, 444 U.S. 277, 284 n. 8 (1980).  For example, federal law is clear that judges "are immune from liability for damages for acts committed within their judicial discretion."  *Draine v. Leavy*, 504 F. App'x 494, 495 (6th Cir. 2012) (internal quotation marks omitted).  The law is also clear that "the absolute immunity that protects judicial officers engaged in judicial functions also protects other state officials engaged in adjudicative functions."  *Dean v. Byerley*, 354 F.3d 540, 555 (6th Cir. 2004).  Such "[q]uasi-judicial immunity 'extends to those persons performing tasks *so integral or intertwined with the judicial process* that these persons are considered an arm of the judicial

---

[9] Roush also argues that Fuller fails to state valid claims for violation of his procedural or substantive due process rights and that she is entitled to qualified immunity on these claims.  (ECF No. 37, PageID.516-42).  Because the Court finds that dismissal of Fuller's claims is appropriate on quasi-judicial immunity grounds, it declines to address the merits of these arguments.

[10] Because Fuller failed to provide any substantive response to Roush's argument that she is entitled to quasi-judicial immunity, he could be found to have waived his opposition to this argument.  *See Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 412 (6th Cir. 2013) (holding that plaintiff's failure to respond to defendant's arguments amounts to a waiver of the argument).  However, in the interests of justice, and given Fuller's *pro se* status, the Court will address the merits of Roush's argument.

officer who is immune.'"  *Draine*, 504 F. App'x at 495 (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (emphasis added)).

Applying these principles, the Sixth Circuit has found that parole board members have absolute quasi-judicial immunity against damages claims for their conduct in making individual parole decisions when acting in an adjudicatory manner.  *See Hughes v. Duncan*, 93 F.4th 374, 379-80 (6th Cir. 2024); *see also Draine*, 504 F. App'x at 496.  "Like judges, board members make parole determinations with an eye towards both prisoner rehabilitation and protecting society at large."  *Id.* at 379.  The same quasi-judicial immunity applies to "those who make recommendations concerning parole[.]"  *Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005).[11]  However, this broad protection does not apply to those parole-related actions that are administrative or "non-judicial" in nature.  *Draine*, 504 F. App'x at 496.  Administrative actions are those that involve no evaluation or decision making.  *See id.*  However, acts "may be judicial even if they require little to no discretion"; for example, even though tasks such as scheduling a hearing "may be characterized by some as mechanical or routine, the fact that scheduling a hearing is an integral judicial … function places it within the realm of activities protected by quasi-judicial immunity."  *Hughes*, 93 F.4th at 381-82 (internal quotation marks omitted).  Thus, "'[w]hether an action is judicial depends on ***the nature and function of the act***, not the act

---

[11] In *Hughes*, the Sixth Circuit explained how policy reasons for extending absolute immunity to decisions of the parole board help determine when immunity should apply, saying: "That immunity should extend in this circumstance is further confirmed by the fact that a parole board member's functions give rise to the potential for vexatious lawsuits, another characteristic shared with judges."  *Hughes*, 93 F.4th at 380.

itself.'"  *Draine*, 504 F. App'x at 495 (emphasis added) (quoting *DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999) (internal citations omitted)).  Ultimately, then, the question is one of context: was the challenged act performed in an administrative capacity, in which case it is not protected by quasi-judicial immunity, or was the challenged act part and parcel of the "judicial process," in which case such immunity would apply?  *Compare Draine*, 504 F. App'x at 495 (explaining that quasi-judicial immunity applies "to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune") (internal quotation marks omitted) *with Morgan v. Bd. of Prof'l Resp. of the Supreme Court of Tenn.*, 63 F.4th 510, 521 (6th Cir. 2023) (declining to apply quasi-judicial immunity to Supreme Court of Tennessee Professional Responsibility Board's Chief Counsel who fired Board member because the member's claim did "not arise from [the Chief Counsel's] action as to [the Board member's] appearance or conduct in any particular case").  Having properly framed the issue, the Court now analyzes Roush's argument that her challenged conduct is protected by absolute quasi-judicial immunity.

### 2.     *Roush is Entitled to Absolute Quasi-Judicial Immunity*

Here, Fuller acknowledges – and documents attached to his complaint establish – that Roush completed the psychological evaluation of him and SORA at the direction – indeed "order" – of the parole board.  (ECF No. 1, PageID.4-5, 47).[12]  Roush argues, then,

---

[12] Fuller admits in his complaint that Roush is responsible for "administering psychological test[s] and submitting her findings, diagnosis, and results of psychological test[s] to the prisoners [sic] mental health file [] for the direct review of the Michigan Parole board to make informative decisions concerning parole of prisoners." (ECF No. 1, PageID.2).

that "[v]iewing the parole board's order for an evaluation and Roush's subsequent recommendation to the parole board in this context, it is clear that quasi-judicial immunity applies in this case." (ECF No. 37, PageID.514). Specifically, Roush argues that, as ordered by the parole board, she:

> … completed a psychological evaluation of Fuller regarding the need for sexual abuse prevention programming at the request of the parole board. This evaluation required her to interview Fuller, evaluate his responses, and review his PSI (presentence investigation report) and treatment history. The fact that this evaluation also included scoring of risk assessment tools does not transform it into a purely administrative function. To the contrary, Fuller claims that she "misdiagnosed" him, implying that the assessment involved both evaluation and decision making. And this recommendation was provided to the parole board.

(*Id.*, PageID.514-15) (internal citations omitted).

In support of her argument, Roush cites *Divish v. Costa*, No. 23-11266, 2024 WL 4349178, at *6 (E.D. Mich. Sept. 30, 2024), for the proposition that "[a]t least one other court in this district has found that a psychologist was entitled to quasi-judicial immunity for preparation of risk assessments for future sexual abuse at the request of the parole board." (*Id.*, PageID.515). In that very recent case, the plaintiff MDOC inmate also alleged that he had been wrongly labeled a sex offender and that his parole had been denied because of his refusal to admit to sexual misconduct. *Divish*, 2024 WL 4349178, at *2. The court first found that two defendants – both of whom were members of the Michigan Parole Board – were entitled to quasi-judicial immunity for requiring the plaintiff to complete sex offender treatment as a condition of parole. *Id.* at *3-4.

The *Divish* court then considered whether defendant Davis – a parole agent – was

15

also entitled to quasi-judicial immunity where she had prepared and submitted a parole violation report containing allegedly false information. *Id.* at *4-5. In concluding that absolute immunity protected Davis' actions, the *Divish* court distinguished *Draine*, noting that in *Draine*, the action at issue was "the act of running a criminal history check prior to parole discharge and the submission of a request for a parole warrant" that had nothing whatsoever to do with the judicial process. *Id.* at *4. Indeed, in *Draine*, the court specifically noted that:

> At the time the routine [criminal history] check was run, neither defendant was investigating Draine's parole compliance. Defendants simply saw a name on a public records sheet that matched the name of a parolee [Draine], and, without performing any evaluation, submitted a request for a parole warrant to the Board. This general, routine, investigative act is neither an adjudicative task nor a task so integral or intertwined with the judicial process such that quasi-judicial immunity applies.

*Draine*, 504 F. App'x at 496. In contrast, Davis' conduct in *Divish* in preparing the parole violation report not only required her to "make judgment calls and recommendations, collect complex evidence, and exercise discretion," but, more importantly, was part of the ultimate parole decision, and therefore was "closely tied to the judicial function." *Divish*, 2024 WL 4349178, at *5. Thus, the court concluded that Davis' actions were shielded by quasi-judicial immunity. *Id.*

Finally, taking the analysis one step further, the *Divish* court extended quasi-judicial immunity to defendant Costa, a social worker employed by the MDOC who the plaintiff alleged violated his civil rights by "using incorrect information in completing the Static-99 and Stable-2007 risk assessment tools … at the request of the parole board." *Id.* at *6.

16

Specifically, the *Divish* court stated, "[a]s previously discussed, quasi-judicial immunity applies to those who make recommendations concerning parole[.]  Costa was acting in such a capacity when she completed the risk assessments.  As such, Costa is entitled to quasi-judicial immunity for her alleged conduct."  *Id.* (internal citations and quotation marks omitted).  In other words, where the parole board was performing a judicial function, the same quasi-judicial immunity that shielded its members also extended to individuals performing tasks at its direction which were integral to the judicial process.

*Divish* is directly on point and, while not binding, constitutes persuasive authority. *See Briscoe v. NTVB Media Inc.*, No. 22-10352, 2023 WL 2950623, at *12 (E.D. Mich. Mar. 3, 2023).  Just like defendants Davis and Costa in *Divish*, Roush's actions in this case were not performed as part of her administrative duties, but rather were performed in conjunction with the parole board's judicial function.  Indeed, Roush was working as an arm of the parole board, at its direction, specifically to aid it in its parole decision, which is clearly a judicial function.  *See Draine*, 504 F. App'x at 496 ("individual parole decisions" are judicial in nature); *Hughes*, 93 F.4th at 379 ("Like judges, board members make parole determinations with an eye towards both prisoner rehabilitation and protecting society at large.").[13]

---

[13] While the focus properly lies on the context in which Roush performed her work, it is worth noting that it involved discretionary, not administrative functions.  *See Divish*, 2024 WL 4349178, at *5 ("Unlike in *Draine*, the preparation of this parole violation report required Davis to make judgment calls and recommendations, collect complex evidence, and exercise discretion."). Specifically, Roush used her professional training to evaluate Fuller from a psychological perspective; she collected, reviewed, and digested complex pieces of evidence, such as the revised PSI and police report; and she exercised discretion and made judgment calls in preparing the SORA she presented to the parole board.

17

In short, because Roush's challenged conduct was "integral or intertwined with the judicial process[,]"the same quasi-judicial immunity that would apply to the parole board members also applies to Roush. *Draine*, 504 F. App'x at 495 (internal quotations omitted).

That application is consistent with other courts' discussion of the policy behind quasi-judicial immunity, which exists in part in recognition of the fact that a parole board member's functions give rise to the potential for vexatious lawsuits, just like that of judges. *See Hughes*, 93 F.4th at 380. On the other hand, declining to afford quasi-judicial immunity to individuals such as Roush, whose responsibilities are deeply intertwined with the function of the parole board, would seriously impair the board's ability to obtain and consider the recommendations of correctional professionals in making parole determinations. Such a chilling effect is at odds with the parole board's goals of "both prisoner rehabilitation and protecting society at large." *Id.* at 379.

Additional case law supports the result reached in *Divish*. For example, in *Williams v. Consovoy*, 453 F.3d 173 (3d Cir. 2006), a very similar case to the instant one, the court considered the plaintiff's challenge to a parole board decision to revoke his parole. Before making this decision, the parole board engaged defendant Gibbons, a licensed psychologist employed by a private company, to perform a psychological evaluation of the plaintiff. *Id.* at 175. In the course of his evaluation, Gibbons "performed a clinical interview and administered various psychological and personality examinations." *Id.* Relying in part on Gibbons' evaluation, the parole board denied parole. *Id.*

The plaintiff then filed suit, alleging that Gibbons had "reported false and misleading information intended to cause the Parole Board to deny [him] parole …." *Id.*

at 176.  The district court granted summary judgment in favor of Gibbons, concluding that "because the Parole Board had ordered Gibbons to perform an evaluation to assist the Parole Board in making its parole determination Gibbons had engaged in 'adjudicative conduct' and was therefore entitled to absolute immunity." *Id.*  In noting that absolute immunity "attaches to those who perform functions integral to the judicial process[,]" the Third Circuit explained:

> Under this "functional" approach, courts look to the nature of the functions being performed by the actor in question and evaluate the effect that exposure to liability would have on an appropriate exercise of that function.  *Hughes [v. Long]*, 242 F.3d [121,] 125 [(3d Cir. 2001)].  Applying this approach, courts conclude that individuals who perform investigative or evaluative functions ***at a governmental adjudicative entity's request*** to assist that entity in its decisionmaking process are entitled to absolute immunity.  *See McArdle [v. Tronetti]*, 961 F.2d [1083,] 1085 [(3d Cir. 1992)] (psychiatrist who performed evaluation of prisoner at court's request entitled to absolute immunity); *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998) (psychologist who performed evaluation of sex offender at court's request entitled to absolute immunity).

*Id.* at 178 (emphasis added).  Applying this "functional" approach, the *Williams* court concluded that Gibbons "performed a function integral to the judicial process" in responding to the parole board's request for information by evaluating the plaintiff and presenting his findings to the board, which in turn "relied on his report and expertise in reaching its ultimate decision to deny [the plaintiff] parole." *Id.*  The Third Circuit thus agreed with the district court that Gibbons "acted as 'an arm of the court'" and was "entitled to absolute immunity" from suit under § 1983. *Id.* (quoting *McArdle*, 961 F.2d at 1085).[14]

---

[14] This Court notes that the *Williams* court rejected the plaintiff's argument that Gibbons should

Finally, numerous other courts, both within and outside this circuit, have afforded absolute quasi-judicial immunity to individuals performing similar functions to those Roush performed in this case.   These include individuals such as probation and parole

---

not be entitled to absolute immunity because he did not make an explicit recommendation as to whether or not to parole the plaintiff.  In doing so, the court explained:

> We find this argument unpersuasive on the ground that the only way to ensure unvarnished, objective evaluations from court-appointed professionals is to afford them absolute immunity from suit for performing evaluations, regardless of whether those evaluations are ultimately found dispositive by the entity that requested them or are ultimately found lacking. *See Moses v. Parwatikar*, 813 F.2d 891, 892 (8th Cir. 1987) (observing that by failing to afford absolute [immunity] from § 1983 actions to court-appointed mental professionals, the threat of civil liability could "taint" the professionals' opinions and "[t]he disinterested objectivity, so necessary to an accurate competency determination, will be lost"); *cf. Burns [v. Reed]*, 500 U.S. [478,] 484 [(1991)] (observing that "it is 'better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation'") (citation omitted).

*Id.* at 179.  Here, although Fuller has not argued that Roush is not entitled to quasi-judicial immunity because her report does not contain an explicit "recommendation" section, any such argument would fail for the same reasons articulated in *Williams*.  At bottom, whether or not Roush's challenged work culminated in a formal parole recommendation, it was done at the behest of the parole board specifically to assist it in making a parole decision, and was thus integral or intertwined with the judicial process such that quasi-judicial immunity applies.  *See Draine*, 504 F. App'x at 496.

officers,[15] social workers,[16] and court-appointed psychologists,[17] all of whom are tasked as part of the judicial process with gathering information, exercising discretion in the evaluation of that information, and preparing reports and/or recommendations for a court or quasi-judicial body to utilize in making its ultimate decision.  The rationale behind extending quasi-judicial immunity to the actions of such individuals applies equally to the actions of Roush in this case.

In sum, Roush's challenged conduct in reviewing the materials in question, interviewing Fuller, and preparing the challenged report was all undertaken in connection

---

[15] *See, e.g., Jenkins v. Young*, No. 23-13188, 2024 WL 3297137, at *10 (E.D. Mich. July 3, 2024) (parole officers entitled to absolute quasi-judicial immunity for performing duties in determining plaintiff's compliance with the conditions of parole, including preparing reports and testifying at parole revocation hearing, because such duties were "judicial in nature"); *Huffer v. Bogen*, 503 F. App'x 455, 461 (6th Cir. 2012) (quasi-judicial immunity has been held to apply to probation officers because they were performing a judicial function when they determined the plaintiff had violated the terms of his probation); *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (probation officers who prepare presentence reports are closely associated with the exercise of a judicial function and entitled to absolute immunity).

[16] *See Colliton v. Bunt,* No. 15-CV-6580 (CS), 2016 WL 7443171, at *8 n. 11 (S.D.N.Y. Dec. 27, 2016), *aff'd*, 709 F. App'x 82 (2d Cir. 2018) (summary order) (quasi-judicial immunity shields a defendant social worker from § 1983 claims arising out of her recommendation to a state court that the plaintiff undergo sex-offender treatment as a condition of his parole).

[17] *See Mikhail v. Kahn*, 991 F. Supp. 2d 596, 663-64 (E.D. Pa. 2014) (recognizing that court-appointed psychologists are entitled to quasi-judicial immunity when they are performing a function integral to the judicial process such as evaluating and diagnosing individuals, even if they "acted intentionally, committed perjury, or conspired to testify falsely under oath") (citing cases); *Coleman v. Florida Dep't of Child. & Fam. Servs.*, No. 14-61019-Civ-ZLOCH, 2017 WL 11886003, at *14 (S.D. Fla. Aug. 16, 2017) (recognizing the importance of extending quasi-judicial immunity to court-appointed psychologists conducting court-ordered examinations and noting that, absent such immunity, such individuals would be reluctant to perform these functions and the "threat of civil liability would taint the overall opinion"); *Czajkowski v. Karn*, No. 23-cv-02924-LTB-SBP, 2024 WL 2794248, at *4 (D. Colo. Feb. 26, 2024) (recognizing that quasi-judicial immunity extends to non-judicial officials exercising discretionary judgment that is functionally comparable to a judge's, such as an individual appointed by the court to conduct a mental health examination to determine the plaintiff's competency to stand trial) (citing cases).

with the parole board's order that she conduct a psychological evaluation of Fuller and provide a recommendation regarding his risk of reoffending to aid it in its parole decision. Because that conduct was so "integral or intertwined" with the parole board's adjudicative function, Roush is entitled to absolute quasi-judicial immunity, and Fuller's substantive and procedural due process claims for money damages against her should be dismissed.

## II.   RECOMMENDATION

For the reasons set forth above, **IT IS RECOMMENDED** that Roush's Renewed Motion to Dismiss **(ECF No. 37)** be **GRANTED**.


Dated: August 13, 2025                          s/David R. Grand
Ann Arbor, Michigan                             DAVID R. GRAND
                                                United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections

is to be served upon this magistrate judge.   A party may respond to another party's objections within 14 days after being served with a copy.   *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).   Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 13, 2025.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager